**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

ANTHONY JEROME TERRY,

        Petitioner,

vs.                                Case No.:    3:13-cv-1140-J-34JRK
                                                    3:10-cr-17-J-34JRK

UNITED STATES OF AMERICA,

        Respondent.

_____/

## ORDER

This case is before the Court on Petitioner Anthony Jerome Terry's pro se Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence (Civ. Doc. 1, Motion to Vacate)[1] and motions for leave to amend (Civ. Doc. 44, First Motion to Amend; Civ. Doc. 53, Second Motion to Amend). At the Court's direction, the United States responded to the first two motions. (Civ. Doc. 7, Response to Motion to Vacate; Civ. Doc. 48, Response to First Motion to Amend). Additionally, the Court has considered Terry's reply briefs (Civ. Doc. 8, First Reply Brief; Civ. Doc. 50, Second Reply Brief), notices of supplemental authority, (Civ. Doc. 4, First Notice of Supplemental Authority; Civ. Doc. 10; Second Notice of Supplemental Authority), and supplemental memorandum regarding the impact of Johnson v. United States, 135 S. Ct. 2551 (2015) (Civ. Doc. 11, Johnson Memorandum). Thus, the case is ripe for a decision.

_____

[1] Citations to the record in the underlying criminal case, United States vs. Anthony Jerome Terry, No. 3:10-cr-17-J-34JRK, will be denoted "Crim. Doc. __." Citations to the record in the civil § 2255 case, No. 3:13-cv-1140-J-34JRK, will be denoted "Civ. Doc. __."
    Unless otherwise indicated, citations to page numbers will be the page number designated by CM/ECF.

Pursuant to 28 U.S.C. § 2255 and Rule 8(a) of the Rules Governing Section 2255 Proceedings[2], the Court has considered the need for an evidentiary hearing and determines that a hearing is not necessary to resolve the merits of this action. See Rosin v. United States, 786 F.3d 873, 877 (11th Cir. 2015) (an evidentiary hearing on a § 2255 motion is not required when the petitioner asserts allegations that are affirmatively contradicted by the record or patently frivolous, or if in assuming the facts that he alleges are true, he still would not be entitled to any relief); Patel v. United States, 252 F. App'x 970, 975 (11th Cir. 2007).[3] For the reasons set forth below, Terry's Motion to Vacate and motions for leave to amend are due to be denied.

## I.    Background

On January 14, 2010, a grand jury sitting in the Middle District of Florida returned a five-count Indictment against Terry and a co-defendant, Roland Deangelo Martin. (Crim. Doc. 1; Indictment). In Counts One and Three, the United States charged Terry and Martin with distributing and possessing with intent to distribute cocaine, respectively, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C). In Count Two, it charged Terry and Martin with maintaining a residence for the purpose of distributing cocaine, in violation of 21 U.S.C. §§ 856(a)(2) and 856(b). In Count Four, it charged Terry and Martin with possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1). Finally, in Count Five, the United States charged Terry with being a convicted felon in

---

[2]    Rule 8(a) of the Rules Governing Section 2255 Proceedings expressly requires the Court to review the record, including any transcripts and submitted materials, to determine whether an evidentiary hearing is warranted before resolving a § 2255 motion.

[3]    Although the Court does not rely on unpublished opinions as precedent, they may be cited throughout this Order as persuasive authority on a particular point.  Rule 32.1 of the Federal Rules of Appellate Procedure expressly permits the Court to cite to unpublished opinions that have been issued on or after January 1, 2007.  Fed. R. App. P. 32.1(a).

possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 924(e). Terry initially pled not guilty to the charges. (Crim. Doc. 17; Minute Entry of Arraignment).

On October 1, 2010, Terry entered a plea of guilty to Counts Three and Four pursuant to a written Plea Agreement. (Crim. Doc. 75; Plea Agreement), (see also Crim. Doc. 220; Plea Transcript). In exchange for his guilty plea, the United States agreed to dismiss Counts One, Two, and Five of the Indictment. Plea Agreement at 3. The Magistrate Judge who presided over the change-of-plea colloquy recommended that the Court accept the guilty plea as "knowledgeable and voluntary as to each Count." (Crim. Doc. 76; Report and Recommendation on Guilty Plea). The Court adopted the recommendation and accepted Terry's guilty plea. (Crim. Doc. 77; Acceptance of Guilty Plea).

In the Presentence Investigation Report (PSR), the Probation Office determined that Terry's offense level was 32 under U.S.S.G. § 4B1.1 because he qualified to be sentenced as a career offender. PSR at ¶¶ 39, 40. In doing so, the Probation Office relied on two prior convictions: (1) a 2005 conviction in Florida for lewd and lascivious battery, and (2) a 1999 conviction in Florida for the sale or delivery of cocaine. Id. at ¶¶ 39, 55, 58. Terry received a three-level reduction under U.S.S.G. §§ 3E1.1(a) and (b) for acceptance of responsibility, resulting in a total offense level of 29. PSR at ¶¶ 41, 42. Because Terry qualified to be sentenced as a career offender, his Criminal History Category was VI. Id. at ¶ 61. As a result, Terry's advisory sentencing range under the United States Sentencing Guidelines was between 262 and 327 months in prison. Id. at ¶¶ 44, 95-97.

At sentencing, Terry objected to the career offender enhancement. (Crim. Doc. 177; Sentencing Memorandum), (Crim. Doc. 221; Sentencing Tr. Vol. I at 12-42). Specifically, Terry argued that his prior conviction for lewd and lascivious battery was not a "crime of

violence" under the Sentencing Guidelines. Sentencing Memorandum at 3-9. In support, he asserted that the lewd and lascivious battery statute, Florida Statute section 800.04(4), is indivisible and broader than the definition of a crime of violence under the career offender guideline's residual clause. Terry also argued that even if the modified categorical approach applied, the offense still was not a crime of violence based on the Shepard[4] documents.

After hearing argument and considering the guidance from United States v. Harris, 608 F.3d 1222 (11th Cir. 2010), Curtis Johnson v. United States, 559 U.S. 133 (2010), Begay v. United States, 553 U.S. 137 (2008), abrogated by Johnson, 135 S. Ct. 2551, and Shepard, 544 U.S. 13, the Court determined that application of the modified categorical approach was necessary to determine whether Terry's conviction for lewd and lascivious battery qualified as a crime of violence. Sentencing Tr. Vol. I at 32-36. The Court then reviewed the charging document, the judgment of conviction, the guilty plea and negotiated sentence document, and the transcript of the plea colloquy to "determine whether [Terry's] conduct involved purposeful, violent, and aggressive conduct." Id. at 36-37. The Court observed that according to the plea transcript, the 14-year old victim reported being raped, and a medical evaluation showed that the victim suffered tears, lacerations, and abrasions near her genitalia. Id. at 37. The Court found those facts to be "consistent with a [forcible] sex act and with what we define as rape, not just the strict liability statutory rape." Id. The Court concluded that the plea colloquy was "sufficient to establish purposeful, violent, and aggressive conduct on the part of [Terry] such that the violation of [section] 800.04(4) that he was convicted of in 2002 would appear … to fall within the definition of a crime of

---

[4]        Shepard v. United States, 544 U.S. 13 (2005).

violence under [U.S.S.G. §] 4B1.1 and as it's defined in 4B1.2." Id. Additionally, the Court noted that the application notes to § 4B1.2 specifically identify a forcible sex offense, "which is what the plea colloquy supports was the crime here," as a crime of violence. Id. However, the Court clarified that it was "not relying solely" on the fact that the application notes list forcible sex offenses as crimes of violence. Id. Having considered the parties' arguments, the applicable authority, and the Shepard approved documents, the Court concluded that Terry's prior conviction for lewd and lascivious battery qualified as a crime of violence for purposes of the career offender enhancement. Id. at 38.

Having overruled Terry's objection to the career offender designation, the Court determined that Terry's advisory sentencing range under the Guidelines was 262 to 327 months in prison. Id. at 47, 52. Despite his lengthy criminal record, the Court varied more than five years below the Guidelines range, imposing a total term of imprisonment of 198 months, consisting of 138 months as to Count Three (possession of cocaine with intent to distribute) and a mandatory consecutive term of 60 months in prison as to Count Four (possession of a firearm in furtherance of a drug trafficking crime). (Crim. Doc. 222; Sentencing Tr. Vol. II at 19). In varying below the Guidelines range, the Court cited Terry's personal history and his attempt to assist law enforcement authorities in the investigation of other crimes, which did not result in the filing of a motion for a downward departure. Id. at 14-15, 21-22.

Terry appealed the sentence, "argu[ing] that the district court erred in finding that his prior Florida conviction for lewd and lascivious battery on a minor constituted a crime of violence sufficient to support his career-offender enhancement." United States v. Terry, 494 F. App'x 991, 992 (11th Cir. 2012). The Eleventh Circuit rejected this argument. Id. at

5

996-97. The court explained that "[t]he district court … was permitted to apply the modified categorical approach because Terry's statute of conviction, § 800.04(4), contains different statutory phrases—some of which that qualify as crimes of violence and some of which do not." Id. at 997 (citations omitted). The court further explained:

> Unlike in Harris, the district court here had access to "specifics" regarding Terry's prior conviction, beyond merely the statutory language and charging document. The government submitted a transcript of Terry's plea hearing, a Shepard-approved document, showing that he agreed to the state's factual basis for his plea. See [United States v. Palomino-Garcia, 606 F.3d 1317, 1328 (11th Cir. 2010)]. Specifically, the state prosecutor asserted that the 14–year–old victim had reported being raped and a medical evaluation corroborated her report, showing that she had tears, abrasions, and lacerations near her vagina. Terry argues that he agreed to the factual basis for his plea in state court because he believed the guilty plea to be in his best interest, not because he committed any forcible acts. Nonetheless, the district court was permitted to rely on the plea hearing transcript, under the modified categorical approach, in determining whether Terry's prior offense constituted a crime of violence. See Palomino Garcia, 606 F.3d at 1328. The victim's report that she was raped and the corroborating medical evidence supported the court's determination that Terry's offense involved conduct that was "purposeful, violent, and aggressive," as opposed to passive conduct that was subject to strict liability. See Harris, 608 F.3d at 1227.

Terry, 494 F. App'x at 997. Thus, the Eleventh Circuit concluded that Terry was properly classified as a career offender and affirmed his sentence on November 6, 2012. See id.

Terry did not petition the United States Supreme Court for certiorari review. As such, his conviction and sentence became final 90 days later, on February 4, 2013, when the time to file a petition for a writ of certiorari expired. See Clay v. United States, 537 U.S. 522, 532 (2003) ("We hold that, for federal criminal defendants who do not file a petition for certiorari with this Court on direct review, § 2255's one-year limitation period starts to run when the time for seeking such review expires."). Terry timely filed the initial Motion to Vacate less than a year later. Terry filed the First Motion to Amend on November 17, 2017,

see First Motion to Amend at 6, and the Second Motion to Amend on March 16, 2020, see Second Motion to Amend at 7.

## II.    Arguments

Terry raises three grounds in the Motion to Vacate. In Grounds One and Three, Terry asserts that the Court wrongly sentenced him as a career offender, and that counsel gave ineffective assistance by failing to raise certain objections to the career offender classification. Motion to Vacate at 3-11, 16-17. In Ground Two, Terry argues that the United States engaged in prosecutorial misconduct by making misrepresentations at the sentencing hearing, and that the United States breached the Plea Agreement by failing to move for a substantial assistance reduction. Id. at 12-15. The United States contends that the career offender issue was resolved against Terry on direct appeal, and that the record refutes the claim raised in Ground Two. See Response to Motion to Vacate.

Terry raises a fourth claim in the Second Notice of Supplemental Authority (Civ. Doc. 10) and the Johnson Memorandum (Civ. Doc. 11). There, Terry argues that his career offender sentence is unlawful in light of the Supreme Court's decision in Johnson v. United States, 135 S. Ct. 2551, where the Court held that the Armed Career Criminal Act's (ACCA's) residual clause is unconstitutionally vague.

In the First Motion to Amend (Civ. Doc. 44), Terry seeks to add a claim that appellate counsel gave ineffective assistance by failing to notify the Eleventh Circuit Court of Appeals of the Supreme Court's grant of certiorari review in Descamps v. United States, 133 S. Ct. 2276 (2013). The United States concedes that this claim relates back to the Motion to Vacate, Response to First Motion to Amend at 2 n.2, but argues that the claim lacks merit, id. at 3-4.

Finally, in the Second Motion to Amend (Civ. Doc. 53), Terry seeks to add a claim that he is entitled to relief based on the First Step Act of 2018, Pub. L. No. 115–391, 132 Stat. 5194, and the deletion of the residual clause from the career offender guideline.

## III.   Discussion

Pursuant to Title 28, United States Code, Section 2255, a person in federal custody may move to vacate, set aside, or correct his sentence. Section 2255 permits collateral relief on four grounds: (1) the sentence was imposed in violation of the Constitution or laws of the United States; (2) the court lacked jurisdiction to impose the sentence; (3) the imposed sentence exceeded the maximum authorized by law; and (4) the imposed sentence is otherwise subject to collateral attack. 28 U.S.C § 2255(a) (2008). Only jurisdictional claims, constitutional claims, and claims of error that are so fundamentally defective as to cause a complete miscarriage of justice will warrant relief through collateral attack. United States v. Addonizio, 442 U.S. 178, 184-86 (1979); Spencer v. United States, 773 F.3d 1132, 1138 (11th Cir. 2014) (en banc) ("[A] district court lacks the authority to review the alleged error unless the claimed error constitute[s] a fundamental defect which inherently results in a complete miscarriage of justice." (internal quotation marks omitted)). The Supreme Court has recognized that a petitioner's claim that he received ineffective assistance of counsel in violation of the Sixth Amendment is properly brought in a collateral proceeding under § 2255. Massaro v. United States, 538 U.S. 500, 504 (2003).

To establish ineffective assistance of counsel, a § 2255 petitioner must demonstrate both: (1) that his counsel's conduct amounted to constitutionally deficient performance, and (2) that counsel's deficient performance prejudiced his defense. Strickland v. Washington, 466 U.S. 668, 687 (1984); Martin v. United States, 949 F.3d 662, 667 (11th

Cir. 2020). In determining whether the petitioner has satisfied the first requirement, that counsel performed deficiently, the Court adheres to the standard of reasonably effective assistance. Weeks v. Jones, 26 F.3d 1030, 1036 (11th Cir. 1994) (citing Strickland, 466 U.S. at 688). The petitioner must show, in light of all the circumstances, that counsel's performance fell outside the "'wide range of professionally competent assistance.'" Scott v. United States, 890 F.3d 1239, 1258 (11th Cir. 2018) (quoting Payne v. Allen, 539 F.3d 1297, 1315 (11th Cir. 2008)). In other words, "[t]he standard for effective assistance of counsel is reasonableness, not perfection." Brewster v. Hetzel, 913 F.3d 1042, 1056 (11th Cir. 2019) (citing Strickland, 466 U.S. at 687). To satisfy the second requirement, that counsel's deficient performance prejudiced the defense, the petitioner must show a reasonable probability that, but for counsel's error, the result of the proceeding would have been different. Martin, 949 F.3d at 667 (citing Padilla v. Kentucky, 559 U.S. 356, 366 (2010)). In determining whether a petitioner has met the two prongs of deficient performance and prejudice, the Court considers the totality of the evidence. Strickland, 466 U.S. at 695. However, because both prongs are necessary, "there is no reason for a court… to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one." Id. at 697; see also Wellington v. Moore, 314 F.3d 1256, 1261 n.1 (11th Cir. 2002) ("We need not discuss the performance deficiency component of [petitioner's] ineffective assistance claim because failure to satisfy the prejudice component is dispositive.").

**A.  Grounds One and Three: The Career Offender Enhancement**

In Grounds One and Three, Terry contends the Court erred by sentencing him as a career offender. Terry raises four sub-claims in support of this argument: (1) that the Court

"based its decision to enhance the sentence on inaccurate, inadmissible, and non-Shepard approved submissions," in violation of the Fifth and Sixth Amendments; (2) that Terry is actually innocent of the prior conviction for lewd and lascivious battery because he insists he did not rape the victim[5]; (3) that the Court erred by applying the modified categorical approach to the lewd and lascivious battery conviction because the statute is indivisible; and (4) that counsel gave ineffective assistance by failing to raise these arguments before the district court, on direct appeal, or in a petition for certiorari review.

As noted, Terry challenged the career offender classification on direct appeal, and the Eleventh Circuit Court of Appeals resolved the issue against him. Terry, 494 F. App'x 991. Ordinarily, "[o]nce a matter has been decided adversely to a defendant on direct appeal it cannot be re-litigated in a collateral attack under section 2255." United States v. Nyhuis, 211 F.3d 1340, 1343 (11th Cir. 2000) (citations omitted). However, where there has been an intervening change in controlling law, the prior resolution of the claim will not bar the defendant from re-raising the claim on collateral review. See Rozier v. United States, 701 F.3d 681, 684 (11th Cir. 2012). Here, Terry argues that the Supreme Court's intervening decision in Descamps, 133 S. Ct. 2276, effected a change in controlling law, such that the adverse decision on direct appeal does not bar him from attacking his career offender classification. See Motion to Vacate at 6-8; First Reply Brief at 2-3.

Assuming that Descamps did effect a change in controlling law, Terry's challenge to the application of the career offender guideline still is not cognizable on collateral review. Spencer, 773 F.3d at 1138-41. In Spencer, the petitioner argued that the Supreme Court's intervening decision in Begay v. United States, 553 U.S. 137 (2008), invalidated his career

---

[5]      This particular argument is both a sub-claim of Ground One and the subject of Ground Three.

offender sentence. <u>Spencer</u>, 773 F.3d at 1135. The Eleventh Circuit rejected the argument, holding that even if the sentencing court misapplied the career offender guideline, the claim was not cognizable on collateral review. <u>Id.</u> In so holding, the Eleventh Circuit explained, "[s]ection 2255 does not provide a remedy for every alleged error in conviction and sentencing." <u>Id.</u> at 1138. When a prisoner alleges that his "sentence was imposed in violation of the … laws of the United States ... or is otherwise subject to collateral attack," 28 U.S.C. § 2255(a), a court lacks authority to grant relief "unless the claimed error constitute[s] 'a fundamental defect which inherently results in a complete miscarriage of justice,'" <u>Spencer</u>, 773 F.3d at 1138 (ellipses in original) (quoting <u>Addonizio</u>, 442 U.S. at 185). The court further explained that a petitioner can challenge a sentencing error as a "fundamental defect" resulting in a miscarriage of justice where the petitioner shows that he is actually innocent or that his sentence is unlawful, such as where the sentence exceeds the statutory maximum. <u>Id.</u> at 1138-39. Additionally, a petitioner can collaterally attack his sentence where "a prior conviction used to enhance [the petitioner's] sentence has been vacated." <u>Id.</u> at 1139. While an error such as sentencing an individual without either that person or his counsel present would constitute a fundamental defect, lesser errors, such as a misapplication of the sentencing guidelines, do not authorize relief under § 2255. <u>Id.</u> at 1140 ("A misapplication of advisory sentencing guidelines ... does not violate an 'ancient' right, nor does it raise constitutional concerns."). As such, the court held that "[w]hen a federal prisoner, sentenced below the statutory maximum, complains of a sentencing error and does not prove either actual innocence of his crime or the vacatur of a prior conviction, the prisoner cannot satisfy the demanding standard that a sentencing error resulted in a complete miscarriage of justice." <u>Id.</u> at 1139.

Terry's first and third subclaims challenging his career offender classification – i.e., that the Court based its decision "on inaccurate, inadmissible, and non-Shepard approved submissions" and that the Court erred by applying the modified categorical approach to the lewd and lascivious battery statute – allege a misapplication of the advisory Sentencing Guidelines. Under Spencer, these claims are not cognizable on collateral review.

Terry's second subclaim – that he is "actually innocent" of the prior conviction for lewd and lascivious battery – would be cognizable under Spencer if the prior conviction had been vacated. Id. at 1139 (a sentencing error is a "fundamental defect" where "a prior conviction used to enhance [the defendant's] sentence has been vacated."). However, this claim fares no better because Terry provides no evidence that the lewd and lascivious battery conviction has been vacated. Id. at 1140 (noting that Spencer did not allege "that any of his prior convictions [had] been vacated."). Notably, before filing the instant Motion to Vacate, Terry tried but failed to have the prior conviction vacated in state court. The Court takes judicial notice that on April 26, 2012, Terry moved in state court, pursuant to Rule 3.850, Florida Rules of Criminal Procedure, to vacate the lewd and lascivious battery conviction. State v. Terry, No. 16–2002–CF–9478 (Fla. 4th Cir.), Dkt. Entry 219. On September 12, 2012 – long before Terry filed the instant Motion to Vacate – the state court denied Terry's Rule 3.850 motion. Id., Dkt. Entry 227. Terry appealed the denial of the Rule 3.850 motion to Florida's First District Court of Appeal, id., Dkt. Entry 230, but the appellate court affirmed the denial, id., Dkt. Entry 235. See also Terry v. State, 111 So. 3d 886 (Fla. 1st DCA 2013). Terry then apparently appealed to the Florida Supreme Court, which dismissed the appeal for lack of jurisdiction. Terry v. State, 118 So. 3d 808 (Fla. 2013). Thereafter, Terry neither petitioned the United States Supreme Court for certiorari

review, nor did he file a habeas corpus petition under 28 U.S.C. § 2254. Terry now attempts to bypass the state collateral review process and § 2254 by collaterally attacking the lewd and lascivious battery conviction in the instant Motion to Vacate. But a motion under § 2255 is not a vehicle for collaterally attacking a prior conviction that forms the basis of a federal sentencing enhancement. Daniels v. United States, 532 U.S. 374, 378-84 (2001) (unless a prior conviction was obtained without the assistance of counsel, or no channel of review was actually available to the defendant regarding the prior conviction, a § 2255 motion is not "an appropriate vehicle for determining whether a conviction later used to enhance a federal sentence was unconstitutionally obtained."); see also Custis v. United States, 511 U.S. 485, 487 (1994) (with the sole exception of convictions obtained in violation of the right to counsel, a defendant cannot use a federal sentencing proceeding as a forum to collaterally attack a prior conviction being used to enhance his sentence under the ACCA). As such, Terry's challenge to the career offender enhancement, based on the contention that he is "actually innocent" of the lewd and lascivious battery conviction, is unavailing.

Terry's fourth subclaim – that counsel was ineffective for not objecting to the application of the career offender guideline – is refuted by the record. Both trial counsel and appellate counsel objected to the use of Terry's lewd-and-lascivious-battery conviction as a predicate offense for his career offender classification. See Sentencing Memorandum at 3-9; Sentencing Tr. Vol. I at 12-42; Terry, 494 F. App'x at 992. Indeed, the objection to the application of the career offender guideline was a central part of trial counsel's presentation at the sentencing hearing. Contrary to Terry's allegations, trial counsel argued that Florida's lewd and lascivious battery statute was indivisible, so that the

modified categorical approach did not apply, and that under <u>Harris</u>, 608 F.3d 1222, the offense did not categorically qualify as a crime of violence. Sentencing Memorandum at 3-9; Sentencing Tr. Vol. I at 12-14. Counsel further argued that even if the modified categorical approach applied, the <u>Shepard</u> documents did not establish that the offense was a crime of violence. Sentencing Memorandum at 6-8; Sentencing Tr. Vol. I at 14-20. Although counsel did concede that, if the modified categorical approach applied, the judgment, the charging document, the guilty plea and negotiated sentence, and the change-of-plea transcript were each <u>Shepard</u> documents, <u>see</u> Sentencing Tr. Vol. I at 22-24, such a concession was appropriate because such documents are, without a doubt, <u>Shepard</u>-approved sources. <u>Shepard</u>, 544 U.S. at 16 (in conducting the modified categorical approach, a sentencing court may examine "the statutory definition, charging document, written plea agreement, transcript of plea colloquy, and any explicit factual finding by the trial judge to which the defendant assented.") (emphasis added); <u>United States v. Palomino-Garcia</u>, 606 F.3d 1317, 1328 (11th Cir. 2010) (same).

Terry also faults counsel for not asserting Terry's "actual innocence" of the lewd and lascivious battery conviction. However, counsel reasonably did not pursue this argument at sentencing because a federal sentencing hearing is not a forum for collaterally attacking a prior conviction that is the basis of a sentencing enhancement. As the Supreme Court held in <u>Custis</u>, a defendant in a federal sentencing proceeding has no right to "collaterally attack the validity of previous state convictions that are used to enhance his sentence under the ACCA," with the sole exception of convictions obtained in violation of the right to counsel. 511 U.S. at 487.[6] Terry does not allege that his prior conviction for

---

[6]     Although <u>Custis</u> involved the ACCA enhancement, not the Sentencing Guidelines' career offender guideline, <u>Custis</u>'s holding applies with equal force in the career offender context.

lewd and lascivious battery was obtained without the assistance of counsel, and there is no evidence that it was. Accordingly, trial counsel could not have been ineffective for not improperly attempting to collaterally attack Terry's prior conviction for lewd and lascivious battery. Freeman v. Att'y General, 536 F.3d 1225, 1233 (11th Cir. 2008) ("A lawyer cannot be deficient for failing to raise a meritless claim.") (citation omitted).

Lastly, Terry argues that appellate counsel gave ineffective assistance by failing to petition the United States Supreme Court for certiorari review after the Eleventh Circuit affirmed his sentence. Motion to Vacate at 9. This claim fails as a matter of law. See Pena v. United States, 534 F.3d 92, 94-96 (2d Cir. 2008) (explaining why the right to counsel does not extend to petitioning for a writ of certiorari). The Supreme Court has unequivocally instructed that the right to counsel guaranteed by the Sixth Amendment extends only through direct appeals as of right. Evitts v. Lucey, 469 U.S. 387, 393 (1985) ("This right to counsel is limited to the first appeal as of right…") (citing Ross v. Moffitt, 417 U.S. 600 (1974)). Indeed, "a defendant has no federal constitutional right to counsel when pursuing a discretionary appeal on direct review of his conviction…." Pennsylvania v. Finley, 481 U.S. 551, 555 (1987); see also Wainwright v. Torna, 455 U.S. 586, 587-88 (1982). Because Supreme Court certiorari review is discretionary, a defendant has no constitutional right to counsel in petitioning for certiorari review. Ross, 417 U.S. at 616-18. "Since [Terry] had no constitutional right to counsel, he could not be deprived of the effective assistance of counsel by his [appointed] counsel's failure to file" a petition for certiorari review. Torna, 455 U.S. at 587–88. Accordingly, Grounds One and Three are due to be denied.

**B. Ground Two: Whether Counsel for the United States Committed Prosecutorial Misconduct or Breached the Plea Agreement**

In Ground Two, Terry raises two related claims. First, Terry asserts that counsel for the government engaged in prosecutorial misconduct during the sentencing hearing when he allegedly misrepresented how he discovered a letter that Terry had written to the State Attorney's Office. Motion to Vacate at 12-15. According to the prosecutor, Terry made false statements in the letter, which led the prosecutor not to call Terry as a witness against co-defendant Roland Deangelo Martin, and as a consequence, not to move for a substantial assistance reduction for Terry. Sentencing Tr. Vol. I at 61-65. Second, Terry contends that the government breached the Plea Agreement by not moving for a substantial assistance reduction after Terry had debriefed investigators on other criminal activities and provided grand jury testimony against Martin. Motion to Vacate at 12, 15.

At the sentencing hearing, the prosecutor stated that as part of a reciprocal disclosure from Martin's defense counsel, he had received a copy of a letter that Terry had written to the State Attorney's Office. Sentencing Tr. Vol. I at 62-63. In the letter, Terry represented that the police had confiscated $2,355.00 from him while executing a search warrant, and that the money belonged to him. Id. at 62-63; (Crim. Doc. 169, Def. Ex. 1; Letter to SAO). According to the prosecutor, Terry's statement that the cash belonged to him was false because the police had actually confiscated the money from Martin. Sentencing Tr. Vol. I at 62-63. Before learning of the letter, the prosecutor had planned to use Terry as a witness at Martin's trial, but the letter convinced the prosecutor he could no longer do so. Id. at 63, 64. Because of Terry's alleged misrepresentation, and because the United States believed it could no longer use Terry as a witness, the prosecutor explained he decided not to file a substantial assistance motion on Terry's behalf. Id. at 65.

Terry contends that the prosecutor misrepresented how he obtained the letter. According to Terry, the prosecutor must have obtained the letter first and <u>then</u> shared the letter with Martin's attorney, not the other way around. Motion to Vacate at 13-14. In support of his theory, Terry alleges that upon receiving a copy of the letter, he noticed that the letter had been faxed <u>from</u> the United States Attorney's Office <u>to</u> Martin's defense attorney. <u>Id.</u> Based on this allegation, Terry asserts that the prosecutor misled the Court about how he came into possession of the letter.

To establish prosecutorial misconduct, a petitioner must show (1) that the prosecutor made improper remarks and (2) that the improper remarks prejudiced his substantial rights. <u>United States v. Merrill</u>, 513 F.3d 1293, 1307 (11th Cir. 2008) (citing <u>United States v. Eckhardt</u>, 466 F.3d 938, 947 (11th Cir. 2006)). Of course, it is improper for a prosecutor to use misstatements and falsehoods. <u>Davis v. Zant</u>, 36 F.3d 1538, 1548 (11th Cir. 1994). However, a petitioner still must show that his substantial rights were affected, which occurs "when a reasonable probability arises that, but for the remarks, the outcome of the [proceeding] would have been different." <u>Eckhardt</u>, 466 F.3d at 947.

The record refutes Terry's allegation that the letter was faxed from the United States Attorney's Office to Martin's lawyer, so as to purportedly prove that the United States misrepresented how it obtained the letter. Although Terry did not attach a copy of the letter to his Motion to Vacate, a copy was presented to the Court as a defense exhibit in a prior hearing. (<u>See</u> Crim. Doc. 169, Def. Ex. 1). The letter does indeed reflect that it was faxed <u>from</u> "3016310" (the fax number of the United States Attorney's Office), but it was not faxed to Martin's counsel. Instead, the letter was faxed to "9043531315," the number for <u>Terry</u>'s own attorney, Thomas Bell. Thus, the letter merely reflects that the government shared a

copy of the letter with Terry's attorney before the sentencing hearing. The letter hardly proves that the government lied about how it obtained the letter.

Regardless, how the government obtained the letter is immaterial. What mattered at sentencing was the content of the letter and the fact that Terry wrote it to the State Attorney's Office. Terry does not dispute the letter's authenticity or the fact that he wrote it. While Terry's attorney acknowledged that the representations in Terry's letter were inaccurate, he argued that Terry subjectively believed the statements to be true. Id. at 66-67. Thus, it is undisputed that Terry wrote a letter to the State Attorney's Office that contained false statements. Whether the prosecutor obtained the letter himself or from Martin's defense attorney is immaterial, and Terry has made no showing that it would have affected the outcome of the sentencing hearing. Accordingly, Terry's prosecutorial misconduct claim lacks merit.

Terry's second subclaim is that the government breached the Plea Agreement by failing to move for a substantial assistance reduction. Terry suggests he was entitled to a substantial assistance reduction because of his efforts at cooperation, which included debriefings with investigators and providing grand jury testimony against Martin. The record refutes this allegation, which the parties addressed at the sentencing hearing.

The government has "a power, not a duty, to file a motion [for a substantial assistance reduction] when a defendant has substantially assisted." Wade v. United States, 504 U.S. 181, 185 (1992). Federal district courts have some authority "to review a prosecutor's refusal to file a substantial-assistance motion and to grant a remedy if … the refusal was based on an unconstitutional motive" such as "the defendant's race or religion." Id. at 185-86. But "a claim that a defendant merely provided substantial assistance will not

entitle a defendant to a remedy or even to discovery or an evidentiary hearing. Nor would additional but generalized allegations of improper motive." Id. at 186 (citations omitted). Indeed, a prosecutor may refuse to file a substantial assistance motion so long as the refusal is rationally related to a legitimate government end. See id. at 186-87. Additionally,

> where a plea agreement states only that the government will file a [substantial assistance] motion if it determines, in its "sole" discretion, that the defendant's cooperation qualifies as substantial assistance, the government does not breach the agreement by failing to file such a motion, and the district court has no jurisdiction to review the claim of breach.

United States v. Nance, 426 F. App'x 801, 802-03 (11th Cir. 2011) (citing United States v. Forney, 9 F.3d 1492, 1500-02 & n.2 (11th Cir. 1993)).

Here, Terry's Plea Agreement gave the United States Attorney's Office sole discretion whether to move for a substantial assistance reduction. The relevant provision stated:

> 9. Cooperation – Substantial Assistance to be Considered
>
> Defendant agrees to cooperate fully with the United States in the investigation and prosecution of other persons, and to testify, subject to a prosecution for perjury or making a false statement, fully and truthfully before any federal court proceeding or federal grand jury in connection with the charges in this case and other matters, such cooperation to further include a full and complete disclosure of all relevant information, including production of any and all books, papers, documents, and other objects in defendant's possession or control, and to be reasonably available for interviews which the United States may require. If the cooperation is completed prior to sentencing, the government agrees to consider whether such cooperation qualifies as "substantial assistance" in accordance with the policy of the United States Attorney for the Middle District of Florida, warranting the filing of a motion at the time of sentencing recommending (1) a downward departure from the applicable guideline range pursuant to USSG § 5K1.1, or (2) the imposition of a sentence below a statutory minimum, if any, pursuant to 18 U.S.C. § 3553(e), or (3), or both. If the cooperation is completed subsequent to sentencing, the government agrees to consider whether such cooperation qualifies as "substantial assistance" in accordance with the policy of the United States Attorney for the Middle District of Florida, warranting the filing of a motion for a reduction of sentence within one year

of the imposition of sentence pursuant to Fed. R. Crim. P. 35(b). <u>In any case, the defendant understands that the determination as to whether "substantial assistance" has been provided or what type of motion related thereto will be filed, if any, rests solely with the United States Attorney for the Middle District of Florida, and the defendant agrees that defendant cannot and will not challenge that determination, whether by appeal, collateral attack, or otherwise.</u>

Plea Agreement at 5-6 (emphasis added). At the sentencing hearing, the prosecutor explained in detail why he decided not to move for a substantial assistance reduction. Sentencing Tr. Vol. I at 61-65. In short, the prosecutor explained that Terry had demonstrated a lack of credibility, which prevented the United States from using Terry as a key witness against Roland Martin. First, Terry previously had made "two blatantly false statements" to investigators. <u>Id.</u> at 63. Then the prosecutor discovered the misrepresentations in Terry's letter to the State Attorney's Office, which was the final straw because it "killed [the prosecutor's] ability to stand before the jury and argue that [Terry] was truthful." <u>Id.</u>

Defense counsel acknowledged that Terry had committed "a significant error" in writing the letter, and counsel did not "contend that [he had] a good-faith basis to challenge whether the government should have filed a 5K motion." <u>Id.</u> at 67. Nevertheless, counsel argued that Terry subjectively believed that his misstatements were true. <u>Id.</u> at 66-67. Defense counsel also urged that, even if Terry did not receive a substantial assistance motion, he should receive consideration under 18 U.S.C. § 3553(a) for his efforts to assist law enforcement. <u>Id.</u> at 67. In that last regard, counsel was successful. The Court explicitly stated that "[i]n imposing sentence, it is my intention to take into account the fact that you attempted to cooperate." Sentencing Tr. Vol. II at 14-15. The Court explained:

> One, I think that while the prosecutor was reasonable in making the decision that, based upon Mr. Terry's correspondence to the state prosecutor, that his

> credibility would be problematic at trial, he was – it was reasonable to determine that he could not use him to testify. But nevertheless, while that was – while it may have been a foolish decision on Mr. Terry's part to obtain – or to attempt to obtain release of that – those funds from the state court prosecutor, he did cooperate, and his cooperation did benefit the United States in that it assisted in the prosecution. And I think some – some credit for that should be – should be included.

Id. Ultimately, the Court imposed a sentence that varied more than five years below the Guidelines range. Id. at 21.

Given this record, the government's refusal to file a substantial assistance motion was neither unconstitutional nor a breach of the Plea Agreement. The government's refusal was not based on any unconstitutional motive, such as race or religion. See Wade, 504 U.S. at 185-86. Rather, it was based on the prosecutor's conclusion that Terry had made misrepresentations that jeopardized his credibility and made him unfit to be a trial witness against Roland Martin. Both Terry's counsel and this Court recognized that the government had a legitimate basis for not filing a substantial assistance motion. Sentencing Tr. Vol. I at 67; Sentencing Tr. Vol. II at 21. Nor did the government breach the Plea Agreement by not moving for a substantial assistance reduction. The Plea Agreement unambiguously committed that decision to the sole discretion of the United States Attorney for the Middle District of Florida. Plea Agreement at 5-6. Because the Plea Agreement gave the prosecutor sole discretion over whether to file a substantial assistance motion, "the government [did] not breach the agreement by failing to file such a motion, and the district court has no jurisdiction to review the claim of breach." Nance, 426 F. App'x at 802-03 (citation omitted). Therefore, relief on the claim in Ground Two is due to be denied.

### C.  **Johnson** Claim

On July 9, 2015, Terry filed a Second Notice of Supplemental Authority to alert the Court of the decision in <u>Johnson v. United States</u>, 135 S. Ct. 2551. (Civ. Doc. 10). In <u>Johnson</u>, the Supreme Court held that the ACCA's residual clause, found in 18 U.S.C. § 924(e)(2)(B)(ii), is unconstitutionally vague. 135 S. Ct. at 2557. Terry filed a supporting memorandum, arguing that the nearly-identical residual clause of the Guidelines' career offender guideline was likewise unconstitutionally vague. <u>See</u> <u>Johnson</u> Memorandum.

When Terry filed the Second Notice of Supplemental Authority and the <u>Johnson</u> Memorandum, it was unclear whether <u>Johnson</u>'s holding would extend to the Sentencing Guidelines' career offender provision. As such, the Court appointed counsel for Terry and stayed the proceedings while that issue was being litigated before the Eleventh Circuit Court of Appeals and the United States Supreme Court. (<u>See</u> Civ. Docs. 14, 18, 22). Ultimately, the Supreme Court held that <u>Johnson</u> did not invalidate the residual clause of the guidelines because "the advisory Guidelines are not subject to vagueness challenges under the Due Process Clause." <u>Beckles v. United States</u>, 137 S. Ct. 886, 890 (2017); <u>see also</u> <u>United States v. Matchett</u>, 802 F.3d 1185, 1193-96 (11th Cir. 2015) (holding that the void-for-vagueness doctrine does not apply to advisory sentencing guidelines), <u>reh'g denied</u>, 837 F.3d 1118 (11th Cir. 2016). Thus, <u>Beckles</u> forecloses Terry's challenge to the application of the career offender guideline, and his <u>Johnson</u> claim fails.

### D.  First Motion to Amend

Terry filed the First Motion to Amend on November 17, 2017. (Civ. Doc. 44). He seeks to add a claim of ineffective assistance of appellate counsel, specifically, that "[a]ppellate counsel was ineffective for not sending a letter to [the] circuit court clerk

informing [the] court that Descamp [sic] was granted certiorari while petitioner's appeal [was] pending after [J]une 2012." First Motion to Amend at 3. According to Terry, the <u>Descamps</u> decision "would've clearly overruled [the] district court decision to use [the] modified categorical approach when determining 'crime of violence' under U.S.S.G. 4B1.1 for [F]lorida statute 800.04(4)(b)." <u>Id.</u> The United States concedes that the ineffective assistance claim relates back to the Motion to Vacate, Response to First Motion to Amend at 2 n.2, but argues that leave to amend is futile because the claim lacks merit, <u>id.</u> at 3-4.

The Eleventh Circuit recognizes "a policy of liberal amendments and supplements to the pleadings under Rule 15 [Federal Rules of Civil Procedure]." <u>United States v. One Piece of Real Property Located at 5800 SW 74th Ave., Miami, Fla.</u>, 182 F. App'x 921, 924-25 (11th Cir. 2006) (citing <u>Harris v. Garner</u>, 216 F.3d 970, 984 (11th Cir. 2000)). Nevertheless, a court may deny leave to amend if the amendment would be futile. <u>Vanderberg v. Donaldson</u>, 259 F.3d 1321, 1326 (11th Cir. 2001). Leave to amend is futile if the new pleading still would be properly dismissed or immediately subject to summary judgment for the opposing party. <u>Cockrell v. Sparks</u>, 510 F.3d 1307, 1310 (11th Cir. 2007). Because the Court finds that the claim in Terry's First Motion to Amend lacks merit in law and fact, leave to amend would be futile.[7]

Terry's appellate counsel filed his initial brief on June 1, 2012, and his reply brief on June 27, 2012. <u>United States v. Terry</u>, No. 12–10291 (11th Cir.), ECF Entries of June 1, 2012, and June 27, 2012. At that time, the United States Supreme Court had not yet granted certiorari review in <u>Descamps</u>. Indeed, the Supreme Court would not grant certiorari review until August 31, 2012, about two months after briefing was completed in

---

[7]     Whether the Court denies leave to amend as futile, or grants leave to amend but denies the claim on the merits given the law and the record, is a distinction without a difference.

Terry's case. <u>Descamps v. United States</u>, 133 S. Ct. 90 (Mem.) (2012). The Supreme Court also would not decide <u>Descamps</u> until well after the Eleventh Circuit affirmed Terry's conviction and sentence on November 6, 2012. <u>Terry</u>, 494 F. App'x 991. Indeed, the United States Supreme Court did not decide <u>Descamps</u> until June 20, 2013, <u>see</u> 133 S. Ct. 2276, more than seven months after the Eleventh Circuit affirmed Terry's sentence.

The Eleventh Circuit has "held many times that reasonably effective representation cannot and does not include a requirement to make arguments based on predictions of how the law may develop." <u>Spaziano v. Singletary</u>, 36 F.3d 1028, 1039 (11th Cir. 1994) (internal quotation marks and alterations omitted).

> In this circuit, we have a wall of binding precedent that shuts out any contention that an attorney's failure to anticipate a change in the law constitutes ineffective assistance of counsel…. That rule applies even if the claim based upon anticipated changes in the law was reasonably available at the time counsel failed to raise it….
>
> Further, the rule that it is not ineffective assistance for an attorney to fail to foresee a change in the law applies even when the change is such that the forfeited issue was, in hindsight, a sure fire winner….

<u>United States v. Ardley</u>, 273 F.3d 991, 993 (11th Cir. 2001) (internal citations omitted). Because Eleventh Circuit law "completely forecloses the contention that an attorney's failure to anticipate [a Supreme Court] decision is ineffective assistance, district courts are not required to, and should not, hold an evidentiary hearing on that issue. There is no relevant evidence to hear. The issue is settled as a matter of law." <u>Id.</u>

Likewise, this Court cannot find that Terry's appellate counsel was ineffective for failing to notify the Eleventh Circuit Court of Appeals, after the completion of briefing, that the United States Supreme Court had merely granted certiorari review in <u>Descamps</u>. The Supreme Court did not decide <u>Descamps</u> until well after the Eleventh Circuit had affirmed

Terry's conviction and sentence. Terry's counsel could not have predicted the holding in Descamps, so this Court cannot fault counsel for not anticipating the ruling. Indeed, several district courts have ruled that a lawyer could not be deemed ineffective for failing to anticipate the Supreme Court's decision in Descamps. Locke v. United States, No. 1:14-CV-141, 2017 WL 6503620, at *7 n.7 (E.D. Tenn. Dec. 19, 2017); Lee v. United States, No. 15-20854-CIV-SEITZ/WHITE, 2017 WL 6048807, at *1-2 (S.D. Fla. Dec. 6, 2017); see also Donnell v. Rivera, No. 2:14cv00147 JLH/JTR, 2015 WL 1876997, at *3 n.5 (E.D. Ark. Apr. 22, 2015) (citing United States v. Williams, No. 4:08cr00240-JLH, Doc. 57 at 2-4 (E.D. Ark. July 3, 2014)). Moreover, Terry points to no evidence that the Eleventh Circuit Court of Appeals would have stayed the case or altered its decision even if counsel had notified the court that the Supreme Court had granted a writ of certiorari in Descamps.

As such, the claim contained in Terry's First Motion to Amend "would still be properly dismissed or be immediately subject to summary judgment." Cockrell, 510 F.3d at 1310. The First Motion to Amend is therefore due to be denied based on futility.

**E.  Second Motion to Amend**

Finally, Terry filed the Second Motion to Amend on March 16, 2020. Although somewhat hard to decipher, Terry appears to claim that he is entitled to relief based on the First Step Act of 2018 and the removal of the residual clause from the career offender guideline, U.S.S.G. § 4B1.2(a).

The Court assumes for the sake of discussion that the removal of the career offender guideline's residual clause and the passage of the First Step Act would extend the statute of limitations under 28 U.S.C. § 2255(f). Even so, the Second Motion to Amend is untimely. The United States Sentencing Commission eliminated the residual clause from

U.S.S.G. § 4B1.2(a) effective August 1, 2016. U.S.S.G. App'x C, Amendment 798. President Trump signed into law the First Step Act on December 21, 2018. Terry did not file the Second Motion to Amend until March 16, 2020 – well over a year after each of these events. As such, the Second Motion to Amend is due to be denied as untimely.[8]

## IV. Certificate of Appealability

The undersigned opines that a certificate of appealability is not warranted. This Court should issue a certificate of appealability only if the petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make this substantial showing, Terry "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,'" Miller-El v. Cockrell, 537 U.S. 322, 335–36 (2003) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)).

Where a district court has rejected a petitioner's claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the claims debatable or wrong. See Slack, 529 U.S. at 484. However, when the district court has rejected a claim on procedural grounds, the petitioner must show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a

---

[8] In any event, the removal of the career offender guideline's residual clause does not suggest the existence of a fundamental defect. See Spencer, 773 F.3d at 1138-41 (misapplication of the career offender guideline is not a fundamental defect that qualifies for collateral relief). To the extent Terry invokes the First Step Act, he does not appear to qualify for relief under § 404 of the Act because (1) he was not sentenced for a crack cocaine offense and (2) Terry was sentenced with the benefit of the Fair Sentencing Act of 2010.

constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Id. Upon consideration of the record as a whole, this Court will deny a certificate of appealability.

As such, and in accordance with the Rules Governing Section 2255 Cases in the United States District Courts, it is hereby

**ORDERED:**

1. Petitioner Anthony Jerome Terry's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence (Civ. Doc. 1) is **DENIED**.

2. Terry's First and Second Motions for Leave to Amend (Civ. Doc. 44; Civ. Doc. 53) are **DENIED**.

3. The Clerk is directed to enter judgment in favor of the United States and against Terry, and close the file.

4. If Terry appeals the denial of the petition, the Court denies a certificate of appealability. Because this Court has determined that a certificate of appealability is not warranted, the Clerk shall terminate from the pending motions report any motion to proceed on appeal as a pauper that may be filed in this case. Such termination shall serve as a denial of the motion.

**DONE AND ORDERED** at Jacksonville, Florida this 6th day of May, 2020.

MARCIA MORALES HOWARD
United States District Judge

lc 19
Copies:
Counsel of record
Petitioner